# Morgan *versus* Neville.

1. Morgan owed Neville wages for labor contracted for and performed in Pennsylvania; Neville owed Shannon for goods sold to him in Pennsylvania, where the three were residents. Shannon attached the debt in Morgan's hands, in Maryland, and served him ; Morgan gave Neville notice of the attachment. Shannon obtained against him as garnishee a judgment which he paid, the proceeding being without collusion between Shannon and Morgan. *Held,* that this was a defence in a suit by Neville against Morgan in Pennsylvania.

2. Shannon, as a citizen of Pennsylvania, had a right to all the privileges of a citizen of Maryland, and could sue in that state.

3. A garnishee in foreign attachment, to protect himself, must give notice to his own creditor.

4. The act of Pennsylvania exempting wages from attachment is not part of the contract, and the act was not carried with the debt into the Maryland forum ; the remedy there was by Maryland laws.

[Morgan v. Neville.]

5. The record of the Maryland justice did not show that all the preliminary steps of notice, &c., had been taken. *Held*, that the presumption was that all things had been done to authorize the entry of judgment.

6. Steel v. Smith, 7 W. & S. 447, distinguished.

May 13th 1873.  Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Somerset county* :   Of May Term 1873, No. 69.

This case commenced before a justice of the peace by George Neville against William Morgan : the justice rendered judgment for the plaintiff, January 16th 1871, for $38.61 ; the defendant appealed to the Court of Common Pleas.

On the trial, November 28th 1872, before Hall, P. J., the plaintiff's claim was for wages as a laborer for the defendant on the " Sand Patch Tunnel," in Somerset county, Pennsylvania.   He testified that in November 1870, he had worked 30 days at $2.50 per day ;—that the defendant had told him that Mr. Shannon had attached $38.42 of defendant's wages in Maryland.

The defendant then gave in evidence the record of H. J. Flanagan, Esq., a justice of the peace in Allegheny county, Maryland.

The record showed a suit, " Michael Shannon v. George Neville.   Plea of debt, $35.91.   Attachment issued on the 14th of November.   Returnable on the 5th of December, 1870.   Directed to Dan'l Wineow, constable.   Attached as per return in the hands of Wm. Morgan, contractor.   1870, December 6th, garnishee did not appear.   1870, December 6th, judgment of condemnation in favor of the plaintiff for $35.91, with interest till paid, and costs, $4.00, against Wm. Morgan, as garnishee.   Dec. 22d, 1870, made and satisfied.   January 28th 1871.   Received payment in full.   Michael Shannon."

The record contained also the necessary affidavits required by the laws of Maryland before issuing process.

The return to the attachment was :—

" I, D. Wineow, a constable of said county, do return and certify, that, in pursuance of the writ of attachment hereunto annexed, I did on the 14th day of November 1870, serve the said writ of attachment, by attaching the goods and chattels, rights and credits of George Neville, in the hands of William Morgan, and that I executed the said writ at the time aforesaid by giving notice to William Morgan and by making known to the said William Morgan."

Defendant also gave evidence that he gave notice to Neville of the attachment the next morning after it was served.

The plaintiff gave evidence that at the time the work was done, the defendant Shannon and the plaintiff all lived at Sand Patch in Somerset county, and that the debt to Shannon was contracted at that place.   The judge directed a verdict for the plaintiff,

[Morgan *v.* Neville.]

reserving the questions of the validity and effect of the record of the attachment.

The jury found for the plaintiff for $43.03.

The law of Maryland under which the proceedings in attachment were had is as follows :—

" Sect. 1. Every person, and every body corporate that has the right to become a plaintiff in any action or proceeding before any judicial tribunal in this state, shall have' the right to become a plaintiff in an attachment against a non-resident of this state, or against a person absconding.

" Sect. 2. Every person who doth not reside in this state, and every person who absconds, may be made a defendant in an attachment. * * *

" Sect. 4. No attachment shall issue (except as hereinafter mentioned) unless there be an affidavit that the debtor is bonâ fide indebted to the creditor in the sum of ————, over and above all discounts ; and at the time of making the affidavit, the creditor shall produce the bond, account, or other evidences of the debt, · by which the said debtor is so indebted ; and shall also make affidavit that he knows, or is credibly informed and verily believes, that the said debtor is not a citizen of this state and that he doth not reside therein.

" Sect. 11. Any kind of property on credits belonging to the defendant, in the plaintiff's own hands or in the hands of any one else, may be attached ; and credits may be attached which shall not then be due.

" Sect. 12. Every attachment issued under the preceding sections shall contain a clause commanding the sheriff or other officer, at the time of executing the said attachment, to make known to each person in whose hands or possession the lands, tenements, goods, chattels and credits so attached, are to be and appear on the return of such attachment before the court out of which it issued, to show cause why such lands, &c., * * * should not be condemned and execution thereof had, &c. * * *

" Sect. 13. If neither the defendant nor the garnishee in whose hands the property or credits may be attached, shall appear at the return of the attachment, the court shall and may condemn the property and credits so attached, and award execution thereof.

" Sect. 35. Any justice of the peace may issue an attachment against a non-resident or absconding debtor, where the sum claimed shall not exceed one hundred dollars; but no special pleading shall be required before a justice of peace.

" Sect. 36. No attachment of the wages or hire of any laborer or employee in the hands of the employer, whether private individuals or bodies corporate, shall affect any wages or salary of the debtor, which are not actually due at the date of the attachment, and the sum of ten dollars of such wages or salary which may be

[Morgan v. Neville.]

due, shall be exempted from attachment, whether on warrant or on judgment.

"Sect. 37. Any judgment of condemnation against a garnishee and execution thereon, or payment by such garnishee, shall be sufficient, and pleadable in bar in any action brought against him by the defendant in the attachment for or concerning the property or credits so condemned. Such attachment shall be returnable before the justice who issued it on a day certain to be named therein, not less than twenty nor more than thirty days from the date of issuing it."

The court (Judge Hall) entered judgment on the verdict on the following opinion :— * * *

"By the Constitution of the United States, article 4, section 1, it is provided that 'full faith and credit shall be given in each state to the public acts, records and judicial proceedings of any other state.' And an exemplification of the record of the proceedings before the Maryland justice, has been produced and offered in evidence. It is claimed that this Maryland judicial proceeding, and the payment of the wages thereon, is a complete bar to the plaintiff's recovery in this case.

"We do not so regard the law. If Neville, the defendant in that proceeding, had been in Allegheny county, Maryland, and had been personally served, or had appeared and made defence, it is possible the position might be sustained. Nevertheless, even in that case there might be a question of jurisdiction. Is it not doubtful whether a Maryland judicial tribunal should entertain jurisdiction of a dispute between parties, all of whom are residents of Pennsylvania, who are temporarily in Maryland—perhaps but for a single day—and where there is no property belonging to the alleged debtor within the jurisdiction of the tribunal? The case would be that of a hungry non-resident creditor, seeking the jurisdiction for the sole purpose of bringing suit against a debtor casually within the limits of the state. This would be throwing upon the courts in Maryland the adjudication of controversies arising in Pennsylvania, between parties resident in Pennsylvania. Certainly the courts there were not organized for any such purpose, and might very properly decline to entertain jurisdiction.

"If, however, the Maryland tribunal exercised jurisdiction by virtue of the mere temporary sojourn of the Pennsylvania parties disputant within the borders of that state, it would not do so without notice to all the parties, and then it should, and no doubt would, respect, ex comitate, the law of the place of contract and domicil of the parties—a beneficent statute intended to protect a laborer, and his family dependent on him for support, from the grasp of a heartless creditor ready to exact the pound of flesh 'nominated in the bond.'

[Morgan *v.* Neville.]

"We know of no reason why the Maryland tribunal (if it entertained jurisdiction) might not properly pay respect to and enforce a Pennsylvania statute in no way contravening the public interest or policy of law, of the state of Maryland, between parties residents of Pennsylvania, litigating a contract made in Pennsylvania.

"But in the case at bar, the alleged debtor (now the plaintiff) was not domiciled in Maryland, nor present within the limits of the state, nor had he any property there. Jurisdiction of the person or property of an alien is founded on his or its presence. Without this, the exercise of jurisdiction is an act of usurpation, and the proceedings are to be treated as a nullity."

The defendant took a writ of error and assigned for error : entering judgment for the plaintiff on the judgment on the reserved points.

*A. H. Coffroth*, for plaintiff in error.—The judgment is to have the same credit in Pennsylvania as Maryland : Mills *v.* Duryee, 7 Cranch 481 ; Rogers *v.* Burns, 3 Casey 526 ; Baxley *v.* Linah, 4 Harris 241 ; Reber *v.* Wright, 18 P. F. Smith 477. The justice had jurisdiction of the property attached : Steel *v.* Smith, 7 W. & S. 446. The payment of a judgment by garnishee in foreign attachment in another state, is a good defence in a suit against him in Pennsylvania : Noble *v.* Thompson Oil Company, 19 P. F. Smith 415.

*A. J. Colborn*, for defendant in error.—A judgment in one state without notice to defendant is not entitled to faith and credit in another state : Benton *v.* Bergot, 10 S. & R. 242 ; Steel *v.* Smith, 7 W. & S. 446. The Maryland tribunal was bound by the law of the place of the contract.

The opinion of the court was delivered, July 2d 1873, by

AGNEW, J.—This action in the court below, was for the wages of labor performed by George Neville for William Morgan, a contractor upon the Sand Patch Tunnel in Somerset county. Morgan set up a payment made by him as garnishee of Neville, in an attachment issued by a justice of the peace of Allegheny county, Maryland, in favor of one Michael Shannon, served on Morgan in Maryland, and judgment against him by default. All the parties were residents of Somerset county, Pennsylvania, but there was no evidence of collusion or combination between Shannon and Morgan, to evade the Pennsylvania statute as to the wages of labor, by going into Maryland for the purpose of having the attachment executed. We must, therefore, assume that the Maryland proceeding was bonâ fide. The court below held, that because Neville, the plaintiff below, was not in Maryland and was not served with notice, he was not affected by the judgment in the at-

[Morgan v. Neville.]

tachment, and that the Maryland court ought to have enforced the Pennsylvania Act, exempting the wages of labor from execution. In both of these respects the learned judge fell into error. Upon the first point, the judge seems to have misapplied the doctrine of Steel v. Smith, 7 W. & S. 447, which decided that a judgment *in personam* in a foreign attachment against a vessel, under the civil code of Louisiana, was not binding, and would not be enforced in Pennsylvania, and that the Louisiana court not having jurisdiction of the person of the defendant, the record was not within the protection of the 1st section of the Article of the Constitution of the United States, requiring full faith and credit to be given in such state, to the public acts, records and judicial proceedings of every other state. But Steel v. Smith concedes jurisdiction in the attachment over the property of the defendant within the state of Louisiana; and this is the only feature in that case applicable to this, the defendant below claiming credit only for the money paid by him under the Maryland attachment. There being no collusion, Shannon, though a citizen of Pennsylvania, had a right to sue out his attachment in Maryland. He falls within the words and spirit of the 1st clause of the 2d section of the 4th Article of the Constitution of the United States, that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states. One of these is the right to institute actions of any kind in the courts of another state: Corfield v. Coryell, 4 W. C. C. R. 380, 1. Shannon went into Maryland, a right he had under that clause, and there made the affidavit required by the Maryland statute, and sued out his attachment. So far then the magistrate had jurisdiction. The attachment was served personally on Morgan, the debtor of Neville, when found in Maryland. A citizen of Maryland would have an undoubted right to serve his attachment on Morgan, had he found him there, in order to secure his debt against Neville; and he having this right, Shannon has the same right under the Constitution of the United States. The debt to Neville was therefore legally attached, and the jurisdiction of the Maryland justice's court vested fully without notice of the writ to Neville. In foreign attachment (and this proceeding is in the nature of a foreign attachment) notice is not given to the defendant by service of the process, for the valid reason that he cannot be served, and service on his property or on his debtor is all that can be had, in the nature of the thing. The garnishee must give notice to his own creditor, if he would protect himself; and this he did in this instance, the next morning, as proved by himself and by Neville.

The Maryland tribunal having jurisdiction, it was not error to disregard the Pennsylvania act, exempting the wages of labor from attachment in the hands of the employer. The Act of 15th April 1845, Pamph. L. 459, is a supplement to the act relating to

[Morgan *v.* Neville.]

executions, and the proviso in the 5th section has relation to the remedy for the collection of debts. It forms no part of the contract itself under which the labor was performed, though the contract was subject to it, and was limited thereby, in this state, in the means of recovery after judgment for the debt. Not being part of the contract, the Pennsylvania statute was not imported with the debt into the Maryland forum, but the remedy there was regulated by the Maryland statute, which gave an exemption to the wages of labor of the sum of ten dollars only. Besides, how could the Pennsylvania act be known in the Maryland forum, without proof or pleading it? The garnishee made default and judgment was given without evidence and without a plea of the Pennsylvania act. It was an error then, to hold, that the Pennsylvania act exempted the debt from the attachment.

Though not noticed in the opinion of the judge upon the reserved question, it is contended here, that the record of the judgment is defective in showing no judgment against the defendant or the garnishee, but only a judgment of condemnation against the property or debt. But the judgment is a judgment *in rem*, and therefore, against the property or debt, and according to the 13th section of the Maryland Code, which says, if neither the defendant nor garnishee in whose hands the property or credits may be attached, shall appear, at the return-day of the attachment, the court may *condemn the property and credits* so attached, and award execution thereof. And by the 37th section, the judgment of condemnation is made pleadable in bar, in any after-action brought against the garnishee by the defendant.

It is also now objected, that it does not appear by the record, that the plaintiff gave the notice required by the 4th section, by setting up, at three or more of the public places in the district or ward, an affidavit and copy of claim and copy of the attachment. But the 42d section provides, if the defendant or garnishee shall not show cause against the attachment, the justice may condemn the property, provided he is satisfied by the oath of the plaintiff or by other proof, that the notice required above has been given. As the proof is thus, by the statute, a mere preliminary to judgment, and not a return of process to appear in the record, but is heard at the trial, the presumption in favor of judicial acts, that they have been rightly done, comes to the aid of this proceeding. We cannot presume that the justice gave judgment contrary to the statute and to his duty, but must presume he was satisfied by the oath of the plaintiff or other proof, that the plaintiff had done all that was requisite to entitle him to judgment. The return to the attachment itself is full and complete, and made by the constable, the proper officer. This being a proceeding before a magistrate, a presumption in favor of the regularity of his proceeding is more necessary, and is strengthened by the 35th section of the

[Morgan v. Neville.]

Code, declaring that no special pleading shall be required before a justice of the peace. This carries a belief that Maryland law as well as our own, looks benignantly upon the proceedings before justices, whose want of knowledge of legal forms must often be their excuse for informalities.

Judgment reversed, and a *venire facias de novo* awarded.